United States District Court
Southern District of Texas

**ENTERED**

October 06, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA ABELDANO and JEANINE POLLION, individually and on behalf of others similarly situated, | § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1044 |
| | § | |
| HMG PARK MANOR OF WESTCHASE, LLC D/B/A PARK MANOR OF WESTCHASE, | § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Plaintiffs' Opposed Motion for Conditional Certification and Notice to Potential Class Members (Doc. 10) and Defendant's Motion to Strike & Objections to Plaintiffs' Evidence (Doc. 16). The court has considered Plaintiffs' motion, Defendant's response (Doc. 15), Plaintiffs' reply (Doc. 20), all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiffs' Motion for Conditional Certification and Notice, and **DENIES** Defendant's Motion to Strike.

## I. Case Background

Plaintiffs filed this action against Defendant under the Fair

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 26, Ord. Dated July 28, 2016.

Labor Standards Act[2] ("FLSA"), alleging that Defendant violated the FLSA by not paying them minimum wage and overtime as required by law.[3]  Plaintiffs allege that there are other similarly situated putative class members who would be interested in opting into the lawsuit.[4]

### A.  <u>Factual Background</u>

HMG Park Manor of Westchase, LLC ("Defendant") runs a nursing facility called Park Manor of Westchase ("Park Manor") at 11910 Richmond Avenue, Houston, Texas, 77082.[5]  Maria Abeldano ("Abeldano") worked for Defendant as a licensed vocational nurse ("LVN") from March 2013, to June 2015, and Jeanine Pollion ("Pollion") worked for Defendant as an LVN from August 2014, to July 2015.[6]  They were considered hourly employees.[7]

LVNs are licensed under Texas Occupations Code § 301.251 and

---

[2]    See 29 U.S.C. §§ 201-219.

[3]    See Doc. 1, Pls.' Compl. ¶ 1.

[4]    See id. ¶¶ 35-50; Doc. 10, Pls.' Mot. to Certify Class p. 9 ("Plaintiffs are aware of other LVNs employed by [Defendant] at Park Manor of Westchase who were similarly affected by this illegal practice during the three years prior to the filing of this action.").

[5]    See Doc. 10, Pls.' Mot. to Certify Class p. 7; Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 3.

[6]    See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 3; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 3.

[7]    See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 3; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 3.

they must work under supervision.[8]  Plaintiffs averred that their duties as LVNs for Defendant "included providing patient care and monitoring; administering medicine to patients; interacting with other Park Manor employees and visitors; monitoring blood-work and patient test results; charting patient records and responding to emergency situations."[9]

In Plaintiffs' complaint, they alleged that Defendant maintained an automatic deduction policy for hourly workers for meal breaks.[10]  Along with Plaintiffs' complaint, Plaintiffs included declarations from themselves and two other LVNs also formerly employed as hourly employees by Defendant, Angie Fullen ("Fullen") and Lakeysha Springer ("Springer"), who have consented to join this lawsuit.[11]  Plaintiffs stated that Defendant's policy mandated that they clock in and out at the beginning and end of their shifts, but not for their meal breaks because Defendant automatically deducted the time.[12]  However, during these meal

---

[8]     Tex. Occ. Code Ann. § 301.053.  LVNs must be supervised by "a registered nurse, physician, physician assistant, podiatrist, or dentist." Id.

[9]     Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 4; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 4.

[10]    See Doc. 1, Pls.' Compl. ¶¶ 14-15.

[11]    See Doc. 5, Pls.' Notice of Filing Notice of Consent Dated Apr. 22, 2016; Doc. 6, Pls.' Notice of Filing Notice of Consent Dated May 9, 2016; Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer.

[12]    See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 5; Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 5; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 5; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha

breaks, Plaintiffs were often interrupted to care for their patients.[13]   Plaintiffs averred that they were busy, with some saying they thought Park Manor was understaffed and that they were told that patient care took priority.[14]   Plaintiffs alleged that they lost wages that they were entitled to because they performed work during these breaks and were not compensated for this work.[15]

Plaintiffs alleged that Defendant's policy was supposed to allow hourly workers to obtain a reversal of the automatic deduction if their breaks were interrupted, shifting the burden to

---

Springer ¶ 5.

[13]     See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 7; 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen, ¶¶ 7-8; Doc 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 7; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Spring ¶¶ 7-8.

[14]     See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 7 ("I often tried to take a meal break but was able to do it only about once a week at the most.  I was very busy with patient care . . . . I usually did not have help from other nurses.  Performing these duties often prevented me from taking breaks.  When I tried to take a break I was usually interrupted within just a few minutes."); Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 8 ("I tried to take breaks but there was just not enough time.  Park Manor seemed to be understaffed and I often had 40-45 patients to care for with no nursing help.  It was made clear that patient care came first and as a nurse I knew that anyway.  I was constantly dealing with patient needs"); Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 7 ("I often tried to take a meal break but at least two or three times per week I was unable to do so.  Park Manor seemed to have a high turnover rate and often appeared understaffed.  I was very busy with patient care . . . . It was not unusual for me to have 35-40 patients without any other nurse to assist me.  Performing these duties often prevented me from taking breaks. When I tried to take a break I was usually interrupted within just a few minutes"); Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶¶ 7-8 ("I tried to take breaks but they were always interrupted.  I usually had a very high number of patients to care for and I was usually the only nurse assigned to care for these patients during my shift.  I was told that lunch was secondary to patient care . . . . I had many duties that kept me from taking uninterrupted meal breaks").

[15]     See Doc. 1, Pls.' Compl. ¶ 55.

them as employees.[16]   However, Plaintiffs alleged that when they sought a reversal "they were scolded, reprimanded, or their requests were ignored or otherwise discouraged."[17]   In support of this allegation, Plaintiffs Springer and Pollion averred that they gave their supervisors requests for reversals and their supervisors ignored these requests, despite the fact that the supervisors knew they worked during their breaks.[18]   Plaintiff Fullen averred that she did not know there was a way to obtain a reversal for the deductions.[19]   Plaintiff Abeldano declared that she was often not able to obtain the form when she worked the night shift; additionally, she says that even when she did turn it in, she still was not paid.[20]   Plaintiffs Fullen, Springer, and Abeldano all indicated that they were discouraged from seeking a reversal and were encouraged to take breaks, but they could not due to patient demands.[21]   Plaintiffs stated that they were not properly

---

[16]   See id. ¶ 20.

[17]   Id.

[18]   See Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 9; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶ 9.

[19]   See Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 10.

[20]   See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 9.

[21]   See id. ("I talked to my Night Manager about not being able to take breaks and she told me that I just needed to make time for breaks."); Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 10 ("I told my Director of Nursing and Assistant Director of Nursing that I was not able to take breaks. They told me they did not understand why and I told them that I just did not have time to take breaks because there was just too much work and not enough

compensated due to Defendant's policy.[22]

Additionally, Plaintiffs allege that Defendant also had "a policy of requiring, encouraging, and permitting employees to work prior to clocking in at the beginning of their scheduled shifts and to continue working after clocking out at the end of their scheduled shifts."[23]  Plaintiffs alleged that this resulted in a failure to compensate hourly employees for overtime work they performed when they were off the clock.[24]  Only the named Plaintiffs are seeking damages for this work before and after their shift.[25]

Therefore, in Plaintiffs' motion, they are only seeking class certification for damages for working during meal breaks.[26] Plaintiffs contend that there are other LVNs who worked for Park Manor of Westchase within three years of filing the lawsuit who

---

held.  They told me they were going to deduct anyway."); Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶ 10 ("I was not paid for the many times I worked through my breaks.").

[22]   See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 9 ("As a result, I was not paid for the time I worked through my breaks"); Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 10 (stating similar facts); Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 9 (same); Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Springer ¶ 10 ("I complained to [my supervisors] that I was not able to take breaks due to my workload.  In response they told me that it was my own fault and that I need to manage my time better").

[23]   Doc. 1, Pls.' Compl. ¶ 61.

[24]   See id. ¶¶ 62-64.

[25]   See Doc. 20, Pls.' Reply p. 6 ("Plaintiffs' Original Collective Action Complaint and Jury Demand seeks damages for pre- and post-shift work for named Plaintiffs only.  Certification is sought only with regard to amounts owed for uncompensated meal breaks.").

[26]   See id.

were also impacted by Defendant's pay policies.[27]   Additionally,
Plaintiffs averred that through their own conversations and
experiences, they know that there are other LVNs at Park Manor at
Westchase who lost money due to Defendant's policies.[28]   Plaintiffs
Abeldano and Pollion stated that they believe other LVNs affected
by these policies would be interested in joining the lawsuit.[29]

## B.   Procedural Background

Plaintiffs Abeldano and Pollion filed this action on April 20,
2016, alleging willful violations of the FLSA.[30]   On April 22, 2016,
and May 9, 2016, Plaintiffs Springer and Fullen consented to join
the collective action.[31]   Defendant filed its answer on May 31,

---

[27]   See Doc. 10, Pls.' Mot. to Certify Class p. 9.

[28]   See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria
Abeldano ¶ 8 ("I saw other nurses working and I know they didn't take breaks
because they were always busy.  We talked about how it wasn't fair that Park
Manor took our money for breaks that we couldn't take."); Doc. 10-3, Ex. B to
Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 9 ("I talked to many of the
other LVNs and they all told me they were not able to take breaks because of
their workload but that time was automatically deducted from their paycheck for
breaks that they never took."); Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class,
Decl. of Jeanine Pollion ¶ 8 ("I know most of the other LVNs were not able to
take their meal breaks but still had that time automatically deducted from their
paychecks.  We often discussed this and commented on how busy we were and that
we should get paid for the breaks that we were unable to take."); Doc. 10-5, Ex.
D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶ 9 ("I know the
automatic deduction policy applies to all LVNs at Park Manor because the notice
I saw posted in the breakroom was to all Park Manor employees.  I often worked
in different units at Park Manor and I talked to many of the other nurses who
told me they were not able to take their shifts but had time automatically
deducted from their paychecks anyway.").

[29]   See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria
Abeldano ¶ 8 ("They seemed upset about this and I believe they would join this
case if given the opportunity to do so"); Doc. 10-4, Ex. C to Pls.' Mot. to
Certify Class, Decl. of Jeanine Pollion ¶ 8 (same).

[30]   See Doc. 1, Pls.' Compl. p. 11.

[31]   See Doc. 5, Pls.' Notice of Filing Notice of Consent Dated Apr. 22,
2016; Doc. 6, Pls.' Notice of Filing Notice of Consent Dated May 9, 2016.

2016.[32]

On June 7, 2016, Plaintiffs filed this pending motion for conditional certification and notice to potential class members.[33] Plaintiffs originally sought to certify a class of nurses, but agreed with Defendant in their reply motion to modify their request for the class, limiting it to LVNs:

> Licensed Vocational Nurses employed at Park Manor of Westchase at any time during April 20, 2013 to present, who were subject to an automatic deduction of their meal-break times and who were either interrupted or were subject to interruptions during a substantial number of meal breaks.[34]

In addition to this class certification, Plaintiffs are seeking, in electronic, computer readable format, the last known email addresses, telephone numbers, and addresses of LVNs who worked for Defendant from April 20, 2013, until now.[35] Plaintiffs request that the court allow Plaintiffs' counsel to mail the notice and consent forms with a return envelope and send it by email; and Plaintiffs also request that they have permission to send it twice.[36] Plaintiffs' counsel proposes to send the notice and consent first within ten days of receiving the list of putative class members and then resend it thirty days after the ten day period to those who

---

[32]   See Doc. 8, Def.'s Ans.

[33]   See Doc. 10, Pls.' Mot. to Certify Class.

[34]   Id. pp. 18-19; see also Doc. 22, Pls.' Reply p. 6.

[35]   See Doc. 10, Pls.' Mot. to Certify Class p. 19.

[36]   See id.

8

did not respond the first time.[37]   Plaintiffs additionally ask that the notice and consent forms be posted in the breakroom at Park Manor, 11910 Richmond Ave., Houston, TX 77082.[38]  Plaintiffs ask for a ninety-day opt-in period, beginning from the date that the notice forms are first sent to the putative class members.[39]   Plaintiffs also request that consent forms that are postmarked by the deadline are considered timely and that those that are not postmarked are considered timely if they are sent within five business days of the deadline.[40]   Plaintiffs state that they will indicate to the court and defense counsel the date on which they send out the notice so it is clear when the opt-in period commences.[41]

Defendant filed a response on July 5, 2016, arguing that Plaintiffs failed to meet their burden under the FLSA and taking issue with some aspects of Plaintiffs' proposed notice.[42] Plaintiffs replied in support of their motion for class certification on July 8, 2016.[43]  Along with its response, Defendant filed a motion to strike Plaintiffs' declarations.[44]   Plaintiffs

---

[37]   See id.

[38]   See id.

[39]   See id.

[40]   See id.

[41]   See id.

[42]   See Doc. 15, Def.'s Resp. pp. 6-14.

[43]   See Doc. 20, Pls.' Reply.

[44]   See Doc. 16, Def.'s Mot. to Strike & Objs.

9

filed their response to this motion on July 25, 2016.[45]

## II. Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. 29 U.S.C. § 207(a). It allows employees to bring an action against their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-216. An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, in other words, to persons alleged to be "similarly situated" to the named plaintiff(s). Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 171-74 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are similarly situated is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990). See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which

---

[45]    See Doc. 24, Pls.' Resp. to Def.'s Mot. to Strike & Objs.

of the two analyses is appropriate).[46]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214). Next, once discovery has largely been completed and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

Shushan espouses the view that [29 U.S.C. § 216(b)

---

[46]     Mooney was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA]. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between a . . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently similarly situated to advance their claims together in a single action under Section 216(b). Acevedo, 600 F.3d at 518-19. Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or a third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits brought under Section 216(b). See, e.g.,

12

<u>Tolentino v. C & J Spec-Rent Servs., Inc.</u>, 716 F. Supp.2d 642, 646 (S.D. Tex. 2010) (collecting cases). The <u>Lusardi</u> approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [Section 216(b)]," in other words, the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). <u>LaChapelle</u>, 513 F.2d at 288; <u>see also</u> <u>Donovan v. Univ. of Tex. at El Paso</u>, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiffs' claims using the <u>Lusardi</u> method.

The present case is at the "notice stage" of the <u>Lusardi</u> analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. <u>Mooney</u>, 54 F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the <u>Lusardi</u> analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three

elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 716 F. Supp.2d at 653. Other courts, however, have rejected the third, non-statutory element. See, e.g., Jones v. Cretic Energy Servs., LLC, 149 F. Supp.3d 761, 768 (S.D. Tex. 2015); Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp.2d 777, 780 (N.D. Ill. 2007). This court is persuaded by the latter group of cases that have rejected the third element, as it is not statutorily required. See Jones, 149 F. Supp.3d at 762. This reasoning is consistent with the instruction from the Supreme Court that the FLSA be liberally construed to carry out its purposes. Id. (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)). Therefore, the court finds that it is enough for Plaintiffs to present evidence that there may be other aggrieved individuals who should be noticed without requiring evidence that those individuals actually want to join the lawsuit.

### III. Analysis

14

The court will first address Defendant's motion to strike Plaintiffs' evidence and objections, and then will turn to class certification and notice.

## A.  Motion to Strike

Defendant urges the court to strike Plaintiffs' declrations, arguing that they are not based on personal knowledge, are too conclusory, contain hearsay statements, and are speculative. Plaintiffs argue that the declarations are based on personal knowledge and that they do not have to contain admissible evidence.

When an FLSA class certification case is in the notice stage, the court generally decides whether or not to certify a class from the submitted pleadings and affidavits. Mooney, 54 F.3d 1213-14. "The remedial nature of the FLSA and [29 U.S.C. § 216] militate strongly in favor of allowing cases to proceed collectively." Tolentino, 716 F. Supp.2d at 647 (quoting Albanil v. Coast 2 Coast, Inc., No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008)(unpublished)).

District courts in the Fifth Circuit have held that at the notice stage, the evidence presented by the plaintiff does not have to be evidence that would be admissible at trial. See, e.g., Lee v. Metrocare Servs., 980 F. Supp.2d 754, 761 (N.D. Tex. 2013)(gathering cases); Castillo v. Alkire Subway, LP, H-08-CV-2658, 2009 WL 9529354, *4-5; McKnight v. D. Hous., Inc., 756 F. Supp.2d 794, 804 (S.D. Tex. 2010).  The court finds this persuasive

because, unlike at the summary judgment stage, at the notice stage the parties have not conducted discovery, and the court is not ruling on the merits. See Castillo, 2009 WL 9529354, at *4-5. Therefore, the court will not strike Plaintiffs' declarations based on the fact that they contain hearsay statements.

In support of this motion, Plaintiffs submitted four declarations from LVNs who worked for Defendant. In Lentz v. Spanky's Rest. II, Inc., 491 F. Supp.2d 663, 669-70 (N.D. Tex. 2007), the court found against conditional certification because the plaintiff only submitted his own affidavit and it was rife with conclusory allegations. However, in this case, Plaintiffs submitted detailed declarations from four putative class members, all of whom have actually opted into the lawsuit. In Songer v. Dillon Resources, 569 F. Supp.2d 703, 707 (N.D. Tex. 2008), the court found that the plaintiffs' allegations were not substantial because they were not supported by facts that showed the basis for their knowledge. However, in this case, Plaintiffs' declarations contain substantial details about their roles as LVNs and ground the basis for their knowledge in these facts. Therefore, Defendant's objection that the declarations are too conclusory is overruled.

In order to be valid, Plaintiff's submitted declarations must be based on personal knowledge. Lee, 980 F. Supp.2d at 762 (gathering cases). Courts have held that it is reasonable to find

16

at the notice stage of the litigation that an employee would have personal knowledge from her work experience.  See, e.g., id. at 763-64 ("[t]he Court finds it reasonable to infer at this [notice] stage that Lee and Albert had personal knowledge of the employment conditions of other Service Coordinators based on their own observations and experiences during their employment.")(citations omitted).

In this case, Plaintiffs worked full time for Defendant for at least six months,[47] which the court finds is an adequate amount of time for them to gain personal knowledge of the working conditions at Park Manor.  Plaintiffs averred that they were negatively impacted by Defendant's meal break policy, and that they became aware that these policies affected additional LVNs as well from postings by Defendant and through conversations with other LVNs.[48] Additionally, Plaintiffs stated that they based the information in these declarations on their "personal knowledge, experiences, and

---

[47]     See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 1 (stating she worked for Defendant from March 2013 through June 2015); Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 1 (stating she worked for Defendant from January 2014 through June 2014); Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 1 (stating that she worked for Defendant from August 2014 through July 2015); Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶ 1 (stating that she worked for Defendant from April 2014 through March 2015).

[48]     See Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶¶ 1, 5-9; Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶¶ 1, 5-10; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶¶ 1, 5-9; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶¶ 1, 5-10.

observations."[49]  District courts in Texas have held that this is enough to establish that a declaration at this stage of the case is based on personal knowledge.  See, e.g., Lee, 980 F. Supp.2d at 762; Perez v. Alcoa Fujikura, Ltd., 969 F. Supp. 991, 998 (W.D. Tex. 1997).  Therefore, the court overrules Defendant's objection that the declarations are not based on personal knowledge.

## B.  **Conditional Certification**

Plaintiffs assert that Defendant violated the Fair Labor Standards Act through its payroll policy "of automatically deducting a predetermined amount of time per shift for a so-called meal breaks."[50]  Defendant urges the court to reject Plaintiffs' motion for class certification, arguing that Plaintiffs did not meet their burden.[51]  Defendant's argument asserts that Plaintiffs are not similarly situated and that they were not subject to a uniform policy.  Defendant also challenges Plaintiff Fullen's inclusion in the suit, arguing that she was a nurse unit manager, giving her different responsibilities than the other putative class

---

[49]      Doc. 10-2, Ex. A to Pls.' Mot. to Certify Class, Decl. of Maria Abeldano ¶ 1; Doc. 10-3, Ex. B to Pls.' Mot. to Certify Class, Decl. of Angie Fullen ¶ 1; Doc. 10-4, Ex. C to Pls.' Mot. to Certify Class, Decl. of Jeanine Pollion ¶ 1; Doc. 10-5, Ex. D to Pls.' Mot. to Certify Class, Decl. of Lakeysha Springer ¶ 1.

[50]      Doc. 10, Pls.' Mot. to Certify Class p. 9.

[51]      Additionally, Defendant asserted the argument that the scope of Plaintiffs' class definition needed to be narrowed because it included all nurses instead of just LVNs.  See id. p. 12.  However, Plaintiffs agreed with Defendant in their reply and edited the class definition to only include LVNs.  See Doc. 20, Pls.' Reply p. 6 ("Defendant argue[s] that the proposed class definition is too broad because it refers to 'Nurses' generally rather than to 'Licensed Vocational Nurses.'  Plaintiffs agree").

members.   Plaintiffs reply that they did provide the substantial allegations that are required to meet their burden.   Plaintiffs contend that Defendant's arguments are misplaced because the subtle differences between the class members that Defendant points out do not matter because they do not have to be identically situated. Additionally, Plaintiffs argue that there was a uniform policy and courts grant conditional certification in these types of cases.

In order to obtain a class certification, a plaintiff must show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n. 8.   Plaintiffs must provide evidence to establish a reasonable belief that aggrieved individuals exist and that the aggrieved individuals are similarly situated.   Cantu, 2009 WL 5195918, at *4.

To meet his burden, Plaintiffs must first show that there are aggrieved individuals.   Heeg v. Adams Harris, 907 F. Supp.2d 856, 862 (S.D. Tex. 2012).   In this case, the declarations provide substantial allegations that there are aggrieved individuals as required under the Lusardi analysis.   See Mooney, 54 F.3d at 1214 & n.8; Tolentino, 716 F. Supp.2d at 653 (finding that two declarations, a declaration from the plaintiff, and the complaint "sufficiently state[d] a claim against Defendant" so that "Plaintiffs [] satisfied their burden").   In their declarations, Plaintiffs put forth detailed information about the nature of their

positions as LVNs.  Additionally, they all averred that they had to work through meal breaks that were automatically deducted from their paychecks, and that they were never able to obtain reversals for this time so they could be paid.  Plaintiffs aver that there are other LVNs out there who were similarly affected.  The court finds that these facts demonstrate the existence of aggrieved individuals who were victims of Defendant's automatic deduction meal break policy.

The second element Plaintiffs must establish in meeting their burden is that these aggrieved individuals are similarly situated. Plaintiffs have provided evidence that the aggrieved individuals are similarly situated.  Plaintiffs averred that they were all LVNs with the same job duties working for Defendant at the same facility, Park Manor at Westchase.  Plaintiffs all aver that they were hourly employees and that Defendant automatically deducted meal breaks for Plaintiffs even though Plaintiffs usually had to work through these meal breaks.  Also, Plaintiffs averred that even when they did attempt to request a reversal of the automatic deduction, these requests were usually ignored.  Additionally, Plaintiffs averred that this practice affected LVNs working for Defendant, which they learned through signs posted in the workplace and through conversations with other LVNs.  Through this evidence, Plaintiffs have shown that putative class members are similarly situated, as they all have the same position and are subject to the

same automatic deduction meal break policy.

Now turning to Defendant's argument that Plaintiff Fullen was not similarly situated to Plaintiffs, Defendant has not provided evidence that she was not an LVN who was similarly situated to Plaintiffs. They argue that she was a nurse unit manager, giving her a different role than other LVNs. However, Plaintiff Fullen averred in her declaration that she was an LVN with the same job duties as the other Plaintiffs who have opted into the lawsuit. Therefore, Defendant's argument is without merit.

Based on the foregoing, the court finds Plaintiffs have provided substantial allegations to meet their burden under the <u>Lusardi</u> analysis.

**C.  <u>Notice</u>**

Defendant challenges the contents of Plaintiffs' notice on several grounds. Defendant first argues that if the court does decide to order notice, then it should include a statement about fees or advances and a statement about Plaintiffs' potential liability if they lose the case. Plaintiffs respond that there are no advances or fees owed by Plaintiffs at this time as the case is on contingency. Plaintiffs argue that this court has decided against including liability language in notices and that Defendant merely wants the language included to discourage putative class members from joining the lawsuit.

Courts are divided on whether plaintiff's liability language

should be included, but courts in this district have denied its inclusion.  *See*, *e.g.*, Reyes v. Quality Logging, Inc., 52 F. Supp.3d 849, 853-54 (S.D. Tex. 2014)("the general authority on this question is decidedly split"); Jones, 149 F. Supp.3d 761, 774; Ratliff v. Pason Sys. U.S.A. Corp., __ F. Supp.3d __, 2016 WL 4275434 (S.D. Tex. July 21, 2016)(gathering cases).  In Reyes, the court declined to include the language because it was concerned about its chilling effect on unsophisticated plaintiffs that outweighed the chance that the plaintiffs would have to pay large costs.  149 F. Supp.3d at 853-54.  In Jones, the court chose to exclude this language for several reasons, including the fact that courts in the Southern District often approve notices without these warnings.  149 F. Supp.3d at 774.  The court in Ratliff found this type of cost language to be "unnecessary and potentially confusing."  2016 WL 4275434, at *1.

In this case, as in Reyes, the putative class members are likely to be unsophisticated litigants.  Additionally, the court agrees with Plaintiffs that this language has the potential to dissuade putative class members from joining the lawsuit, and that the likelihood that the costs will accrue to a significant magnitude for putative class members is small.  The court finds that such language is unnecessary and potentially confusing for the notice.  Therefore, the court is persuaded by Plaintiffs' arguments and finds that Defendant's proposed language should not be included

in Plaintiffs' notice to putative class members.

Defendant also argues that Plaintiffs' notice is not neutral. Defendant contends that the form of the notice endorses the merits of Plaintiffs' case by stating that "[t]his notice and its content has been authorized by the United States District Court, Southern District of Texas, Houston Division, the Honorable Judge Sim Lake."[52] Additionally, Defendant argues that the proposed notice is not neutral and does not emphasize the statement that "the Court has made no decision in this case about the merits of Plaintiffs' claims or Defendant's defenses."[53]   Plaintiffs reply stating that the notice is neutral, and that the language that there has been no decision on the merits is emphasized more than in other cases in this district.

The court here agrees with Plaintiffs that the language "the Court has made no decision in this case about the merits of Plaintiffs' claims or Defendant's defenses" is emphasized in Plaintiffs' notice.   Plaintiffs have made this language all capitalized in their notice, which makes it stand out fromother text.  Addressing Defendant's next argument, the court finds that the notice is neutral towards the parties.  The inclusion of the statement that it has been authorized by the court is not a comment on the merits, which is made clear by the fact that it is followed

---

[52]   See Doc. 15, Def.'s Resp. pp. 13-14.

[53]   See id.

by the statement that the court has made no decision on the merits of the case.   Therefore, Defendant's objections to the form of Plaintiffs' notice are overruled.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Plaintiffs' Motion for Conditional Class Certification and Notice, and **DENIES** Defendant's Motion to Strike.

The court defines the conditional class as follows:

> Licensed Vocational Nurses employed at Park Manor of Westchase at any time during October 6, 2013 to present, who were subject to an automatic deduction of their meal-break times and who were either interrupted or were subject to interruptions during a substantial number of meal breaks.

Additionally, the court **ORDERS** that Defendant provide Plaintiffs in electronic (or written, if the records are in written form), computer readable form, the last known email addresses, telephone numbers, and addresses of all LVNs who worked for Defendant from October 6, 2016 until now.   Additionally, the court **ORDERS** Plaintiffs' counsel to send the notice and consent by mail to class members on the list provided by Defendant, and **GRANTS** Plaintiffs' request that they can mail and email the notice.   Also, the court **GRANTS** Plaintiffs' request to send the notice and consent within ten days of receiving the class list from Defendant, and their request to resend it to those on the list thirty days after the first ten days.   The court **ORDERS** Defendant to post Plaintiffs'

24

notice and consent forms in the breakroom of Park Manor of Westchase, 11910 Richmond Ave., Houston, TX 77082.   The court **ORDERS** a ninety-day opt-in period, beginning from the date the notice and consent forms are first sent out to the putative class members.  The court will consider consent forms that are postmarked by the deadline to be timely.  Those that are not postmarked  will be considered timely by the court if they are sent within five business days of the deadline.  Plaintiffs are **ORDERED** to provide the court and defense counsel with notice indicating the date on which they begin to send out the notice and consent forms to the putative class members.

    **SIGNED** in Houston, Texas, this 6th day of October, 2016.

                                             _____

                                             U.S. MAGISTRATE JUDGE